## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RAFAEL FIGUEROA, KAHLIL CABBLE,
TY'ANTHONY SCOTT, and RYAN PETTY *on*
*behalf of themselves and all others similarly*
*situated,*

                       PLAINTIFFS,

v.

POINT PARK UNIVERSITY,

                       DEFENDANT.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No.  2:20-cv-1484

**CLASS ACTION COMPLAINT
AND DEMAND FOR JURY
TRIAL**

Plaintiffs, Rafael Figueroa, Kahlil Cabble, Ty'Anthony Scott, and Ryan Petty (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this Class Action Complaint against Defendant, Point Park University (the "University" or "Defendant"), and allege as follows based upon information and belief, except as to the allegations specifically pertaining to them, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of all persons who paid tuition, housing (if living on campus), and/or fees to attend Point Park University for an in-person, hands-on education for the Spring 2020 semester and had their course work moved to online learning. Such persons paid all or part of the tuition, housing, and mandatory student fees ("Mandatory Fees") for the semester for in-person live education, on campus housing, and on-campus experiences.

1

2.     The University has not refunded any amount of the tuition, housing (for those who moved out after March 27, 2020), or any of the Mandatory Fees, even though it cancelled in-person classes starting on March 13, 2020.

3.     On or about March 13, 2020, the University also stopped providing any of the services or facilities the Mandatory Fees were intended to cover because of the University's response to the Coronavirus Disease 2019 ("COVID-19") pandemic.

4.     The University's failure to provide the services for which tuition and the Mandatory Fees were intended to cover since approximately March 13, 2020 is a breach of the contracts between the University and Plaintiffs and the members of the Class and is unjust.

5.     The University only provided prorated refunds to students for housing who vacated their campus housing on or before March 27, 2020. Those students who did not move out of University housing until after March 27 should also be entitled to a prorated refund.

6.     In short, Plaintiffs and the members of the Class have paid for tuition for a first-rate education and an on-campus, in-person educational experience, with all the appurtenant benefits offered by a first-rate university, and were provided a materially deficient and insufficient alternative, which alternative constitutes a breach of the contracts entered into by Plaintiffs and the Class with the University.  As said in New York Magazine, "*Universities are still in a period of consensual hallucination with each saying, 'We're going to maintain these prices for what has become, overnight, a dramatically less compelling product offering.*'"[1]

---

[1] James D. Walsh, "The Coming Disruption," New York Magazine, May 11, 2020, available at https://nymag.com/intelligencer/2020/05/scott-galloway-future-of-college.html?utm_source=fb (site last visited October 1, 2020).

7.      If Plaintiffs and members of the Class wanted to enroll in an online program, they would have done so through the University's online option, which costs significantly less than the in-person education contracted for.

8.      As to the Mandatory Fees, Plaintiffs and the Class have paid fees for services and facilities which are simply not being provided; this failure also constitutes a breach of the contracts entered into by Plaintiffs and the Class with the University.

9.      Plaintiffs seek, for themselves and Class members, the University's disgorgement and return of the prorated portion of its tuition and Mandatory Fees, proportionate to the reduction in contracted for services provided during the Spring 2020 semester when the University closed and switched to online distance learning, or, in the case of housing, for any members of the Class that moved out after March 27, 2020, a prorated portion of the housing fee for the days left in the semester after they moved out. The return of such prorated amounts would compensate Plaintiffs and the Class members for damages sustained by way of Defendant's breach.

## PARTIES

10.      Plaintiff Rafael Figueroa is an individual and citizen of Pennsylvania and resides in Allegheny County, Pennsylvania.  He paid to attend the Spring 2020 semester at the University as a full-time undergraduate student.  Plaintiff paid tuition, housing and Mandatory Fees for the Spring 2020 semester to enable him to obtain an in-person, on-campus educational experience, on campus housing, and enable him to participate in the activities and to utilize the services covered by the Mandatory Fees that he paid.  He has not been provided a prorated refund of the tuition for his in-person classes that were discontinued and moved online, or the Mandatory Fees he paid after the University's facilities were closed and events were cancelled.

11.     Plaintiff Kahlil Cabble is an individual and citizen of Pennsylvania and resides in Allegheny County, Pennsylvania.  He paid to attend the Spring 2020 semester at the University as a full-time undergraduate student.  Plaintiff paid tuition, housing and Mandatory Fees for the Spring 2020 semester to enable him to obtain an in-person, on-campus educational experience, on campus housing, and enable him to participate in the activities and to utilize the services covered by the Mandatory Fees that he paid.  He has not been provided a prorated refund of the tuition for his in-person classes that were discontinued and moved online, or the Mandatory Fees he paid after the University's facilities were closed and events were cancelled.

12.     Plaintiff Ty'Anthony Scott is an individual and citizen of Pennsylvania and resides in Allegheny County, Pennsylvania.  He paid to attend the Spring 2020 semester at the University as a full-time undergraduate student.  Plaintiff paid tuition, housing and Mandatory Fees for the Spring 2020 semester to enable him to obtain an in-person, on-campus educational experience, on campus housing, and enable him to participate in the activities and to utilize the services covered by the Mandatory Fees that he paid.  He has not been provided a prorated refund of the tuition for his in-person classes that were discontinued and moved online, or the Mandatory Fees he paid after the University's facilities were closed and events were cancelled.

13.     Plaintiff Ryan Petty is an individual and citizen of Pennsylvania and resides in Allegheny County, Pennsylvania.  He paid to attend the Spring 2020 semester at the University as a full-time undergraduate student.  Plaintiff paid tuition, housing and Mandatory Fees for the Spring 2020 semester to enable him to obtain an in-person, on-campus educational experience, on campus housing, and enable him to participate in the activities and to utilize the services covered by the Mandatory Fees that he paid.  He has not been provided a prorated refund of the tuition for

his in-person classes that were discontinued and moved online, or the Mandatory Fees he paid after the University's facilities were closed and events were cancelled.

14.     Defendant, Point Park University, is a private university founded in 1960.  The University offers numerous major fields for undergraduate students, as well as a number of graduate programs.  Defendant's undergraduate and graduate programs include students from many, if not all, of the states in the country.  Its principal campus is located in Pittsburgh, Pennsylvania. Defendant is a citizen of Pennsylvania.

## JURISDICTION AND VENUE

15.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

16.     This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## FACTUAL ALLEGATIONS.

18.     Plaintiffs and Class Members paid to attend the University's Spring 2020 semester including tuition and the Mandatory Fee.

19.     The Spring 2020 semester at the University began in January 2020, and ended in May 2020.

20.     Tuition and Mandatory Fees at the University for an undergraduate in-person education for the Spring 2020 Semester was as follows:

### Full-time Undergraduate Costs

| | Per Semester | Per Year |
|---|---|---|
| Schools of | | |
| ✚ Arts and Sciences | | |
| ✚ Business | $15,590 | $31,180 |
| ✚ Communication | | |
| ✚ Education | | |
| Conservatory of Performing Arts | $19,870 | $39,740 |
| University Fee | $325 | $650 |
| Activity Fee | $185 | $370 |
| Technology Fee | $200 | $400 |
| Health Services Fee | $75 | $150 |
| Additional fees may apply depending on each student's degree program. | | |

[2]

### Part-time and Accelerated Undergraduate Costs

| | Cost Per Credit* | 3-Credit Course |
|---|---|---|
| Schools of | | |
| ✚ Arts and Sciences | | |
| ✚ Business | $878 | $2,634 |
| ✚ Communication | | |
| ✚ Education | | |
| Conservatory of Performing Arts | $1,127 | $3,381 |
| University Fee | $50 | $150 |
| Technology Fee per credit | $10 | $30 |
| Additional fees may apply depending on each student's degree program. | | |
| *Part-time students take 3 to 11 credits per semester.  Accelerated program students take up to 12 credits per semester and attend evening or Saturday-only programs. | | |

[3]

---

[2] https://www.pointpark.edu/admissions/TuitionCosts/Tuition/index
[3] *Id.*

21.     Tuition and Mandatory Fees at the University for a graduate in-person education for the Spring 2020 Semester was as follows:

## Graduate Costs

|  | Cost Per Credit | 3-Credit Course |
|---|---|---|
| Master's Degree Programs | $881 | $2,643 |
| Master's and Certificate Education Programs | $510 | $1,530 |
| Doctoral Programs (Ed.D., online Ed.D., Ph.D.) | $889 | $2,667 |
| Psy. D. | $916 | $2,748 |
| University Fee | $60 | $180 |
| Technology Fee per credit | $30 | $90 |
| Health Services Fee | $5 | $15 |
| Doctoral Programs (Ed.D., online Ed.D., Ph.D. and Psy.D.) Technology Fee per Credit | $30 | $90 |

[4]

22.     Tuition and Mandatory Fees at the University for an online education for the Spring 2020 semester was significantly less than in-person tuition, and was as follows:

## Online Costs
### (Fully online programs* only)

|  | Cost Per Credit | 3-Credit Course |
|---|---|---|
| Online Undergraduate | $480 | $1,440 |
| Online Master's (new students) | $675 | $2,025 |
| Online Master's (returning students) | $675 | $2,025 |
| Online Education Programs (master's degree programs, certificate programs and ABCTE) | $510 | $1,530 |
| Online Ed.D. | $889 | $2,667 |
| Online Undergraduate Technology Fee (per credit) | $30 | $90 |
| Online Graduate Technology Fee (per credit) | $30 | $90 |

---

[4] *Id.*

23.     Students had the ability to choose an in-person and on-campus education, or education via the University's online program.

24.     Specifically, when applying for admission, you can choose from the following options, one of which is for an "Online degrees":



25.     The price for an online education is significantly lower than what is paid for an in-person on-campus education. The two educational options are promoted and priced differently, and are separate and distinct.

26.     Plaintiffs and the members of the Class did not choose "Online degrees" and instead, paid tuition for the benefit of on-campus live, interactive instruction and an on-campus educational experience throughout the entire Spring 2020 semester.

---

[5] https://www.pointpark.edu/apply

27.     Housing costs for the Spring 2020 semester ranged from $2,530 per semester to $4,310 per semester. Plaintiffs and members of the Class who lived on-campus during the Spring 2020 semester paid the applicable cost for the benefit of on-campus housing throughout the entire semester.

28.     Plaintiffs and the members of the Class paid the Mandatory Fees for the Spring 2020 semester so they could benefit from on-campus experiences, access to facilities, and activities.

29.     The University has not provided any refund of the tuition or Mandatory Fees and continues to retain the same, while failing to provide the services for which they were paid. Similarly, the University has not provided any refund of housing for those students who were not able to move out prior to March 27, 2020.

### *In Response to COVID-19, the University Closed Campus, Preventing Access to its Facilities, Services, Housing, and Dining, and Cancelled All In-Person Classes*

30.     On March 12, 2020, the University announced that it was cancelling classes from March 13 through March 17, and that classes resuming on March 18 will be online only through the remainder of the Spring 2020 semester.[6]

31.     On March 13, 2020 the University announced that it was limiting meetings on campus to 25 or less people, and that all people must follow social distancing guidelines while on campus.[7]

32.     On March 16, 2020, the University announced that it "strongly enourage[d] resident students to move home as soon as possible."[8] Further, the University announced that "all student

---

[6]https://www.pointpark.edu/StudentLife/HealthandStudentServices/StudentHealthCenter/returnToCampus/covid/March2020Updates
[7] *Id.*
[8] *Id.*

events, meetings, rehearsals, etc. through the end of the semester are canceled. This includes all student organization travel (i.e. trips & conferences) as well as off-campus student organization events and meetings."[9]

33.     On March 17, 2020, the University announced that all students must leave resident housing by March 27, 2020 in order to receive a refund.[10]

34.     On March 20, 2020, the University closed most campus facilities and buildings, only allowing essential staff and personnel on campus.[11]

35.     On March 23, 2020, the University announced that it was changing the traditional in-person letter grading system to a "Pass/No Credit" option. Under this option, the students would first be allowed to view their final grade, then would be able to change it to "Pass" or "No Credit" instead.

36.     The University subsequently extended virtual online learning throughout the Summer 2020 semester, and are offering a "hybrid" in-person and online course schedule for the Fall 2020 semester, with the option for students to go remote online only.

37.     On April 13, 2020, the University provided information regarding the refund of the Student Activity Fee.[12] No refunds were made for the other Mandatory Fees.

38.     The University has not held any in-person classes since March 12, 2020.  All classes since that time have only been offered in a remote online format with no in-person instruction or interaction.

---

[9] https://www.pointpark.edu/StudentLife/StudentAffairs/COVID-19/announcements
[10]   https://www.pointpark.edu/StudentLife/HealthandStudentServices/StudentHealthCenter/returnToCampus/covid/March2020Updates
[11] *Id.*
[12] https://www.pointpark.edu/StudentLife/HealthandStudentServices/StudentHealthCenter/returnToCampus/covid/April2020Updates

39.     Most of the services for which the Mandatory Fees were assessed were also terminated or cancelled at or about this time, such as access to University health and wellness facilities, programs or services; fitness facilities; student events or sports; and an in-person commencement.

40.     In tacit acknowledgement that not rebating a pro-rata portion of tuition and the remainder of the Mandatory Fees was improper for the period when there were no on-campus activities and only distanced online learning, the University has decided to discount its Summer 2020 semester, which was scheduled to be online rather than in-person. The discounted tuition for the Summer 2020 semester was the same as the online tuition and Mandatory Fees, unless "on-ground" classes are made available:

> **+ Summer Online Undergraduate Courses:** Discounted tuition rate of $480 per credit, plus a $30-per-credit technology fee.
>
> **+** Should on-ground classes be made available this summer, these courses will carry the tuition rate of $878 per credit plus applicable fees. [13]

### _The University's Online Courses Are Subpar to In-Person Instruction, For Which Plaintiffs and the Class Members Contracted with the University to Receive by Paying Tuition and Fees_

41.     Students attending the University did not choose to attend an online institution of higher learning, but instead chose to enroll in the University's in-person educational program. If the Plaintiffs and members of the Class wanted to attend an online institution of higher learning, they would have enrolled in the University's online program.

42.     On its website, the University markets the University's on-campus experience as a benefit of enrollment:

---

[13] https://www.pointpark.edu/admissions/ThinkSummerCoursesAtPointPark

## Make Point Park Your Home

Whether this is your first time away from home or you've always been an independent, free spirit, we provide safe, comfortable, amenity-rich living options on our unique urban campus.

The true college experience doesn't just happen in classes. It happens on the way to the dining hall with your friends, it happens at a late-night movie in your residence hall, it happens while you're up late studying with a classmate. It's what happens when you live on campus.

You'll find:

+ People experiencing the same things as you
+ Friendships and camaraderie
+ Insights through intentional programming
+ Guidance and mentorship from your Resident Educator

## Learning Beyond the Classroom Door

Point Park University offers an active, exciting — and sometimes unpredictable — environment for campus life, right in the heart of Downtown Pittsburgh. The University has a full calendar of student activities and events, with more than 50 student clubs and organizations on campus. There's plenty to do off campus as well, from live music in Market Square to riverfront trails that run right by campus.

Throughout the academic year, students have many opportunities for community service work, from Point Park's annual Pioneer Community Day all around the city to on-campus laser tag events that raise money for charity. Combine that with many opportunities for fun— such as the Sunset Luau or the cake-off competition — and you have a student experience that's never boring. [14]

43.     The University uses its website, promotional materials, circulars, admission papers, and publications to tout the benefit of being on campus and the education students will receive in its facilities.

44.     The online learning options being offered to the University's students are sub-par in practically every aspect as compared to what the educational experience afforded Plaintiffs and the members of the Class once was.  This sub-par experience is a result of the unilateral reduction of benefits, and changing of products provided, by the University.

---

[14] https://www.pointpark.edu/StudentLife/OutsidetheClassroom/index

45.     The University acknowledges the reduction in benefit received from online education by providing reduced tuition for students who enroll in its online program, and in discounting the tuition for Summer 2020 to match the online program tuition.

46.     During the online portion of the Spring 2020 semester, the University principally used programs by which previously recorded lectures were posted online for students to view on their own, or by virtual Zoom meetings. Some classes, however, stopped providing any instruction whatsoever and only required minimal assignments to be turned in prior to the end of the semester. Therefore, there was a lack of classroom interaction among teachers and students and among students that is instrumental in interpersonal skill development.

47.     The online formats being used by the University do not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams.

48.     Students have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

49.     Further, the option to receive a "Pass/No Credit" grade after first reviewing your letter grade provides an education leniency that would not otherwise be provided in person.

50.     Access to facilities such as libraries, laboratories, computer labs, and study rooms, are also integral to a college education, and access to the myriad activities offered by campus life fosters social development and independence, and networking for future careers, all substantial and materials parts of the basis upon which the University can charge the tuition it charges, are not being provided.

51.     The University has not made any refund of any portion of the tuition Plaintiffs and the members of the Class paid for the Spring 2020 semester for the period it offered the lower

priced online distance learning even though it reduced tuition for students enrolled in Summer 2020, and even though the University's tuition for its online program is significantly less.

52.     Nor has the University refunded an appropriate portion of the Mandatory Fees it collected from Plaintiffs and the members of the Class for the Spring 2020 semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay.

53.     The University has provided Plaintiffs and members of the Class with the reduced benefits similar to that of the online program, all while retaining the higher priced tuition paid for in-person on campus education and experiences.

54.     There are also members of the Class who were unable to leave the campus prior to March 27, 2020. These members of the Class should be entitled to a pro-rata refund of housing charges for the remaining days of the Spring 2020 semester after these students left campus.

55.     In acknowledging that a tuition and fee decrease or refund is the proper remedy when reducing the benefit paid for and providing education to an online-only format, Northwestern, Georgetown, Princeton, American, and Johns Hopkins Universities have all provided refunds of 10% of students' tuition for the Fall 2020 semester after going fully virtual; and Williams College 15%.[15] Indeed, there appears to be a growing apprehension among college students that their institutions are continuing in-person classes for the Fall 2020 semester, despite possibly putting folks' health at risk in order to avoid providing such refunds. As University of Alabama graduate student, Drew Brown, put it "I think that they're going to push staying on

---

[15] https://www.marketwatch.com/story/more-colleges-are-reversing-course-and-going-remote-after-covid-19-outbreaks-and-some-are-now-reducing-tuition-11599076746

campus for as long as possible just so that there's not a big issue with refunds . . . ."[16]

56.     Plaintiffs and the Class members are therefore entitled to a prorated refund of the tuition and Mandatory Fees they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed, and any students who were unable to leave the campus prior to March 27, 2020 should be entitled to a pro-rata refund of housing fees they paid for the Spring 2020 semester for the remaining days of that semester after they left campus.

## CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as: All persons who paid tuition, housing, and/or the Mandatory Fees for a student to attend in-person class(es) during the Spring 2020 semester at the University but had their class(es) moved to online learning (the "Class").

58.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

59.     The requirements of Rule 23(a)(1) are satisfied.  The Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class members is unknown to Plaintiffs, the University has reported that 3,929 students have enrolled for the 2019-2020 school year.[17]  The names and addresses of all such students is known to the University and can be identified through the University's records.  Class members may be notified of the pendency

---

[16]https://www.cnbc.com/2020/09/08/-its-a-bummer-college-students-share-what-campus-is-like-right-now.html
[17] https://www.pointpark.edu/about/admindepts/institutionalresearch/5-Yr-Variance-FA15-FA19.pdf

of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

60.     The requirements of Rule 23(a)(2) are satisfied.  There are questions of law and fact common to the members of the Class including, without limitation:

a.     Whether the University accepted money from Plaintiffs and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the Spring 2020 semester;

b.     Whether Defendant breached its contracts with Plaintiffs and the members of the Class by failing to provide them with an in-person and on-campus live education after March 12, 2020;

c.     Whether Defendant breached its contracts with Plaintiffs and the Class by failing to provide the services and facilities to which the Mandatory Fee pertained after mid-March 2020;

d.     Whether Defendant breached its contracts with Plaintiffs and members of the Class by requiring them to leave the University housing they had paid for by March 27, 2020 or forfeit any refund;

e.     Whether Defendant is unjustly enriched by retaining a portion of the tuition and Mandatory Fees during the period of time the University has been closed, and Plaintiffs and the members of the Class have been denied an in-person and on-campus live education and access and the services and facilities for which the Mandatory Fees were paid;

f.     Whether Defendant intentionally interfered with the rights of the Plaintiffs and the Class when it moved all in-person classes to a remote online format, cancelled all on-campus events, strongly encouraged students to stay away from campus, and

discontinued services for which the Mandatory Fees were intended to pay, all while retaining the tuition and Mandatory Fees paid by Plaintiffs and the Class; and

g.     The amount of damages and other relief to be awarded to Plaintiffs and the Class members.

61.     The requirements of Rule 23(a)(3) are satisfied.  Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fees that they paid, that the University stopped providing in mid-March.

62.     The requirements of Rule 23(a)(4) are satisfied.  Plaintiffs are an adequate class representative because their interests do not conflict with the interests of the other Class members who they seek to represent, Plaintiffs have retained competent counsel who are experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.  Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

63.     Class certification of Plaintiffs' claims is also appropriate pursuant to Rule 23(b)(3) because the above questions of law and fact that are common to the Class predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against the University.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized

litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

### FIRST CLAIM FOR RELIEF

**BREACH OF CONTRACT**
**(On Behalf of Plaintiffs and the Class)**

64.     Plaintiffs repeat and re-allege the factual allegations above, as if fully alleged herein.

65.     Plaintiffs bring this claim individually and on behalf of the members of the Class.

66.     The University offered Plaintiffs and the Class the choice between traditional, in-person courses and Online learning. The University charged a premium to attend traditional, in-person courses.

67.     The University offered Plaintiffs and the Class the opportunity to live on-campus, providing housing and food for a fee.

68.     The University offered various commodities to Plaintiffs and the Class in exchange for the Mandatory Fees.

69.     For the Spring 2020 semester, Plaintiffs and the members of the Class accepted the University's offer and paid the University tuition for traditional, in-person courses; for housing (if living on campus); and the Mandatory Fees for services and facilities.

70.     Plaintiffs and the Class paid the University such amounts to receive the agreed-upon education, housing, and facilities and services for the *entire* Spring 2020 semester, not merely a portion of it.

71.     By accepting such payments from Plaintiffs and the Class, the University was obligated to provide the agreed-upon education, housing, and facilities and services for the *entire* Spring 2020 semester, not merely a portion of it.

72.     Defendant is in possession of materials, circulars, advertisements and other communications between Plaintiffs and members of the Class on one hand, and the University on the other, evincing the terms of the contract.

73.     The University has breached its contract with Plaintiffs and the Class by failing to provide the promised in-person and on-campus live education, failing to provide on campus housing, as well as the services and facilities to which the Mandatory Fees pertained, yet has retained monies paid by Plaintiffs and the Class for a live in-person education and access to these services and facilities.  Plaintiffs and the members of the Class have therefore been denied the benefit of their bargain.

74.     Plaintiffs and the members of the Class have suffered damage as a direct and proximate result of the University's breach in the amount of the prorated portion of the tuition and Mandatory Fees they each paid equal to the reduction in contracted for education and services during the portion of time in the Spring 2020 semester when in-person classes were discontinued and facilities were closed by the University, as well as a pro-rata portion of housing costs for those Class members who moved out after March 27, 2020.

75.     The University should return such portions of the tuition and Mandatory Fees to Plaintiffs and each Class Member.

## SECOND CLAIM FOR RELIEF

### UNJUST ENRICHMENT
**(On Behalf of Plaintiffs and the Class)**

76.     Plaintiffs repeat and re-allege the factual allegations above, as if fully alleged herein.

77.     Plaintiffs bring this claim individually and on behalf of the members of the Class in the alternative to the First Claim for Relief, to the extent it is determined that Plaintiffs and the Class do not have an enforceable contract with the University regarding the relief requested.

78.     Plaintiffs and members of the Class conferred a benefit on the University in the form of tuition, housing (if living on campus) and the Mandatory Fees paid for the Spring 2020 semester.  The payment of this tuition and Mandatory Fees were to be in exchange for an in-person, on-campus educational experience to be provided to Plaintiffs and the members of the Class.

79.     Similarly, the payment of University housing fees for the Spring 2020 semester conferred a benefit on the University that was intended to provide housing for such students throughout the entire Spring 2020 semester.

80.     The University has retained the full benefit of the tuition and Mandatory Fees payments by Plaintiffs and the members of the Class, yet has failed to provide the quality of education and services and facilities for which tuition and the Mandatory Fees were paid, including those for an in-person and on-campus live education, and access to the University's services and facilities.  In addition, the University has retained the full benefit of the housing fees paid by those Class members who were unable to move out prior to March 27, 2020.

81.     Instead, the University provided only the benefits and education similar to those provided to its online students, who pay a significantly lower rate for such benefits and education.

82.     The University's retention of all of the tuition and Mandatory Fees paid by Plaintiffs and members of the Class during the period of time the University has been closed, and Plaintiffs and the members of the Class have been denied an in-person and on-campus live education and access and the services and facilities for which the Mandatory Fees were paid, is unjust and inequitable under the circumstances.  Similarly, the University's retention of the portion of the value of housing fees following move outs by Class members after March 27, 2020 is also unjust and inequitable.

83.     The costs incurred for having an online only program is significantly lower than the overhead needed to provide classes and services on campus. This is evinced by the significantly lower tuition and Mandatory Fees paid by students enrolled in the University's online program.

84.     The University already had the capabilities to provide online education through its use of its online program, and therefore, should not have incurred any additional costs in the transition.

85.     Allowing the University to retain the tuition, housing, and Mandatory Fees paid for in-person, on-campus education, housing and experiences, after reducing the benefit provided and the costs incurred by the University, unjustly enriches the Defendant.

86.     Accordingly, the University has been unjustly enriched and should return the prorated portion of the tuition and Mandatory Fees that Plaintiffs and Class members each paid equal to the reduction in benefit for education and services during the Spring 2020 semester when in-person classes were discontinued and facilities were closed by the University, as well as a pro-rata portion of the housing fees for those who were unable to move out prior to March 27.

## THIRD CLAIM FOR RELIEF

**CONVERSION**
**(On Behalf of Plaintiffs and the Class)**

87.     Plaintiffs repeat and re-allege the factual allegations above, as if fully alleged herein.

88.     In the alternative to the First Claim For Relief, Plaintiffs brings this claim individually and on behalf of the members of the Class.

89.     Plaintiffs and members of the Class provided the University with property in the form of funds (tuition, housing, and Mandatory Fees), to be in exchange for in-person, on-campus services, facilities, and face to face instruction.

90.     The University exercises control over Plaintiffs' and Class members' property.

91.     Plaintiffs' and Class members' funds are earmarked by the University in the ordinary course of business for purposes of providing account statements, and/or potential refunds, to Plaintiffs and Class members. For example, under The Higher Education Act, the University must be able to identify and account for tuition paid by students in order to provide refunds to those who withdraw during a period of enrollment.

92.     The University intentionally interfered with Plaintiffs' and the Class members' property when it unilaterally moved all in-person classes to a remote online format, cancelled all on-campus events, strongly encouraged students to stay away from campus, and discontinued services for which the Mandatory Fees were intended to pay, all while retaining the tuition, housing, and Mandatory Fees paid by Plaintiffs and the Class.

93.     The University's retention of the tuition, housing, and Mandatory Fee paid by Plaintiffs and the Class without providing the services for which they paid, deprived Plaintiffs and

Class of the benefits for which the tuition, housing, and Mandatory Fee were paid, and of their funds paid for those benefits.

94.     Plaintiffs and the Class members are entitled to the return of the prorated amounts of tuition, housing, and Mandatory Fees each paid equal to the reduction in benefit for education and services during the Spring 2020 semester when in-person and on-campus live education, housing, and access to the University's services and facilities were unavailable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered in favor of Plaintiffs and the Class against Defendant as follows:

(a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(c)     For compensatory damages in an amount to be determined by the trier of fact;

(d)     For an order of restitution and all other forms of equitable monetary relief;

(e)     Awarding Plaintiffs' reasonable attorneys' fees, costs, and expenses;

(f)     Awarding pre- and post-judgment interest on any amounts awarded; and,

(g)     Awarding such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to the Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: October 1, 2020

Respectfully submitted,

*s/ Gary F. Lynch*

Gary F. Lynch
Edward W. Ciolko*
Nicholas A. Colella*
**CARLSON LYNCH LLP**
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222
P (412) 322-9243
F. (412) 231-0246
E. glynch@carlsonlynch.com
   eciolko@carlsonlynch.com
   ncolella@carlsonlynch.com

*Counsel for Plaintiffs and Proposed Class*

**Pro Hac Vice* applications forthcoming