IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAFAEL FIGUEROA, *et al*, | ) Civil Action No. 2:20-cv-01484 |
| | ) |
| Plaintiffs, | ) Magistrate Judge Lisa Pupo Lenihan |
| | ) |
| v. | ) ECF No. 40 |
| | ) |
| POINT PARK UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR 28 U.S.C. § 1292(B)
CERTIFICATION FOR IMMEDIATE APPEAL**

I. **INTRODUCTION**

Currently pending before this Court is Defendant's Motion requesting modification of the Court's August 11, 2021 Order to (a) include certification under 28 U.S.C. § 1292(B) to allow Point Park University to seek interlocutory appeal of that Order to the United States Court of Appeals for the Third Circuit and (b) stay this litigation pending appellate proceedings. ECF No. 40. Defendant's Motion has been fully briefed at ECF No. 41 (Defendant's Brief in Support); ECF No. 46 (Plaintiffs' Brief in Opposition); and ECF No. 50 (Defendant's Reply). For the reasons set forth herein, said Motion will be denied.

II. **PROCEDURAL HISTORY**

By Memorandum Opinion and Order of August 11, 2021 (ECF No. 36 and 37) (the "Denial of Dismissal"), this Court granted in part and denied in part Defendant's Motion to Dismiss this case (ECF No. 25). More particularly, the Court denied Defendant's request to dismiss Plaintiffs claims for breach of contract and unjust enrichment in the alternative, but

granted its request to dismiss Plaintiffs' claim for conversion. In so holding, the Court provided an in-depth review of the Pennsylvania (and the more general) law of implied contract as between students and universities and concluded that Plaintiffs have stated a claim for breach of implied contract under unambiguous Pennsylvania law.  The Court further concluded that Plaintiffs have stated a claim for unjust enrichment/*quantum meruit* in the alternative.  Defendant now requests certification for appeal and stay of this litigation on grounds that the Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation …." ECF No. 41 at 2 (quoting 28 U.S.C. § 1292(b)).[1]  Defendant

---

[1] More fully, Defendant specifies that "the August 11 Order involves controlling questions [*sic*] of law—*one* relating to the bedrock principles of contract law governing the relationship between private Pennsylvania colleges and their students and, *in particular*, whether that contract law authorizes the inclusion of implied-in-fact terms." *Id.* (emphasis added).  And it proceeds to present its briefing on the controlling and disputed nature of the Court's legal conclusion regarding the applicability of Pennsylvania implied contract law in this case. *Id. Compare* ECF No. 50 (asserting Defendant's intent to have raised multiple controlling questions of law by its use of the plural).
In its Reply, Defendant belatedly informs its earlier use of the plural "questions" to contend that the proper interpretation of Defendant's Financial Registration Terms and Conditions document – as the express contract governing the parties' relationship and thus precluding implied terms or *quasi* contract recovery - is an additional controlling question of law warranting certification.  ECF No. 50.

First, a party confronted with the fact that the only "controlling question of law" specified and challenged is not controlling (because issues such as recovery in *quasi* contract remain), cannot *ad hoc* recharacterize those issues as additional §1292(b) controlling questions of law in its Reply brief.  Defendant's apparent misapprehension to the contrary notwithstanding, that §1292(b) operates by a Court's certification of its *order* in no way abrogates a moving party's obligation to identify each *specific question of law* purportedly grounding its entitlement to immediate appellate review. *Cf.* ECF No. 50 at 4-5.  And as a matter of due process, Defendant had an obligation to identify said question[s] in its initial filing to afford Plaintiffs a full opportunity to respond.  Defendant's mere parenthetical citation to a case observing that "questions of contract interpretation" are reviewed *de novo* – absent identification of a contractual ambiguity giving rise to a question of law at issue – does not suffice.  *Cf.* ECF No. 41 at 6.

Moreover, while Defendant's Reply cites other Courts' dismissals of unjust enrichment claims as precluded by an express contract, it fails to link these decisions to any controlling legal principal as to which there is a substantial ground for or actual difference of opinion. That an express contract precludes an equitable claim for unjust enrichment if it expressly or impliedly addresses every material term of the parties' agreement is a legal principal as to which Defendant asserts no dispute. Indeed, Courts routinely dismiss unjust enrichment claims brought in the alternative where the matter at issue is found to be governed by contract.  *See e.g.*, ECF No. 50 at 3 (citing with parentheticals to three cases, none of which suggests any disagreement with this legal principal).  It is not clear whether Defendant is contending, *e.g.*, that as a matter of Pennsylvania law any written contract however sparse precludes both consideration of implied terms and *quasi* contractual recovery, or that as a matter of Pennsylvania law a contract limited to financial terms suffices to control the parties' rights and duties as to academic services.  It is clear that application of undisputed law to the facts of a case is not a matter for discretionary certification under

errs as to the existence of grounds for appeal under these three elements informing a Court's appropriate exercise of discretion under §1292(b) regarding certification of an otherwise unappealable order.

## III. ANALYSIS

Defendant asserts that whether Pennsylvania recognizes the law of implied-in-fact contract as applicable to "the relationship between private Pennsylvania colleges and their students" is (1) a controlling question of law as to which (2) there are both "substantial grounds for differences of opinion" and "actual and existing differences of opinion on these legal issues" as reflected in recent student contract litigations against Temple University, the University of Pennsylvania, and the University of Pittsburgh. ECF No. 41 at 2. Defendant further asserts, as to the third certification element, that an immediate appeal will materially advance the ultimate termination of the lawsuit because (1) resolution in Defendant's favor would result in dismissal of Plaintiffs' Complaint and (2) there are two other appeals "already pending in the Third Circuit that involve the same threshold legal issues".[2] As Plaintiffs note, Defendant bears the burden of demonstrating that certification of the order for appeal is warranted and that all three of the factors identified in § 1292(b) are met. ECF No. 46 at 1-2 (citing *Consumer Fin. Prot. Bureau v. Navient Corp.*, 2021 WL 772238, *3 (M.D. Pa. Feb. 26, 2021; *Piazza v. Major League Baseball*, 836 F. Supp. 269, 270 (E.D. Pa. 1993)).

---

§1292(b) and that the District Court's assessment of a particular contract's enforceability or preclusivity under applicable State law is subject to *de novo* review on appeal, *i.e.*, in due course.

[2] ECF No. 41 at 2 (citing *Hickey, et al. v. Univ. of Pittsburgh*, Appeal No. 21-2013 ("Hickey"); *Ryan v. Temple Univ.*, Appeal No. 21-2016 ("Ryan")). The Court notes that these cases are on appeal from *final* decisions in the District Court. It further notes that the appeal status of those cases does not advance an evaluation of Defendant's entitlement to a discretionary certification of this case for interlocutory appeal.

3

This Court concluded that in Pennsylvania, as elsewhere, the contractual relationship between a university and its students is generally not contained in a single express writing. Rather, it is comprised of the many different representations provided to the students during their enrollment. Thus, student-university contracts are considered under the law of implied (or 'implied-in-fact') contract." ECF No. 36 at 10.[3]  It has therefore further observed that "although it does not appear to be an independently enforceable agreement, the FRTC may – in keeping with the general nature of student-university relationships – appropriately be considered as one component of an implied-in-fact contract, a contract further informed by (a) other written representations made to the students during their enrollment, and (b) their resultant reasonable expectations given (c) the surrounding context and parties' course of conduct." *Id.* at 14-15. [4] Finally, the Court also concluded that "whether and to what extent the parties have entered into a contractual relationship for the provision of in-person on-campus educational services will be better resolved following discovery" and that "Plaintiffs have sufficiently stated a claim for unjust enrichment or *quantum meruit* in the alternative". *Id.* at 21-22.

---

[3]  *See id.* at 8-13 (discussing Pennsylvania cases, including *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397 (Pa. Super. Ct. 1992); *Swartley v. Hoffner*, 734 A.2d 915 (Pa. Super. Ct. 1999); *Reardon v. Allegheny Coll.*, 926 A.2d 477 (Pa. Super. Ct. 2007); *Gati v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 91 A.3d 723 (Pa. Super. Ct. 2014) and *McCabe v. Marywood Univ.*, 166 A.3d 1257, 1261 (Pa. Super. Ct. 2017)).  *See also id.* at 11 n. 15 ("In light of Defendant's briefings, the Court emphasizes the clarity with which its survey of decisions revealed both (1) a decades-long and wide adoption of the general principles set forth in the treatise cited above – i.e., student-university contracts are considered under the jurisprudence of implied contract and courts generally broadly consider official materials promulgated by a university in determining the specific representations on which its students might reasonably rely; and (2) that Pennsylvania law has developed in accord with these same principles."); ECF No. 46 at 5.

[4] The "FRTC" refers to the Financial Registration Terms and Conditions document on which Defendant relies as its sole and exclusive governing contract with its students.  *See e.g.* ECF No. 41 at 3-4.  "The FRTC is an unintegrated document (1) setting forth express written undertakings solely on the part of the student, and (2) which on its face requires reference to external documents and/or representations to complete otherwise amorphous or ambiguous terms." ECF No. 36 at 14; *see also id.* at 4 (citing ECF No. 26-1).  The Court accordingly expressly noted*, e.g.*, the FRTC's "apparent absence of consideration" on Defendant's part and failure "to address the essential/material terms of a valid contract" and that – because it could be considered as a component of an implied contract [governing the student-university relationship] – the Court need not further address whether it was unenforceable at that time. *Id.* at 14 & n. 19.

At bottom, Defendant premises its "inten[tion] to immediately appeal" the Denial of Dismissal on a contention that this Court's legal conclusion as to the applicability of Pennsylvania's implied contract doctrine in this case is not only mistaken, but meets both the first and third criteria for interlocutory appeal under §1292(b) because resolution in Defendant's favor would result in dismissal of Plaintiffs' Complaint.  *See* ECF No. 41 at 6 (providing citations for principal that question of law is "controlling" if its reversal "will terminate the action in the District Court); *id.* (observing that potential termination would "avoid the expenditure of public and private resources in further litigation of this class action", including possible trial to a verdict that might be reversed); *id.* at 8 ("Because resolution in Point Park's favor will result in dismissal . . . requirement [3, that appeal materially advance litigation,] easily is satisfied.").

Defendant anticipates an end to this action should the "Third Circuit rule[ ] that Plaintiffs cannot survive a motion to dismiss unless it [sic] identifies a specific and definite promise by Point Park" and "therefore reverse[ ] the August 11th Order."  *Id*.  But this sought-for appellate determination both (a) to the extent it suggests that "specific and definite" representations inducing reasonable reliance (*i.e.* "promises") were not required under its prior decision, misstates this Court's analysis of the viability of Plaintiffs' contract claim and (b) exceeds the conclusion of law on which Defendant bases its entitlement to immediate appeal.  And thus it skirts the question of that holding's actual qualification for certification under §1292(b).[5]

---

[5] An appellate court's authority to address additional issues in rendering its decision on a case before it on §1292(b) certification, does not stand in the place of the Defendant's obligation to meet the gate-keeping criteria of that statute.  In other words, Defendant cannot establish entitlement to discretionary certification where resolution of its briefed question of law – Pennsylvania's implied contract doctrine – would not determine/advance the litigation, by asserting that the Circuit Court could later elect to determine other issues such as contract preclusivity.  To hold otherwise would be to write the requirement of "controlling" out of the statute.

First, as a part of its analysis at Section IV(A)(1) of the August 11, 2021 Memorandum Opinion, the Court carefully explained that Plaintiffs were required to and did identify sufficiently definite "written representations in university-promulgated materials [identified in Pennsylvania Superior Court student-university contract cases and more generally] properly considered under governing Pennsylvania law". ECF No. 36 at 12 n. 16 (declining to "confine consideration of the parties' contractual relationship to the terms of the FRTC" and rejecting Defendant's assertion that under Pennsylvania law "contracts between universities and their students must be comprised of express, written promises and cannot be supplemented (or changed) by implied contract terms or course of conduct"); *see also id.* at 13 n. 18.[6]

Second, as this Court explained at length in its prior Memorandum Opinion, breach of contract (determined under Pennsylvania's doctrine of implied contract) is the first of two potential bases for the partial reimbursement of charges "commensurate with [Plaintiffs'] loss of benefits" sought in the case *sub judice*.[7] Assuming *arguendo* the Court of Appeals were to conclude that this Court erred in its application of Pennsylvania contract law or the Supreme Court of Pennsylvania were to hold, on certification of the question for a definitive statement of the law, that the doctrine of implied-in-fact contract is inapplicable to contracts between students

---

[6] *Cf. id.* at 18-19 (summarizing holding on breach of contract claim):

> Plaintiffs sufficiently plead an implied contract under Pennsylvania law 'to provide in-person, on-campus instruction, experiences, and activities.' They specifically allege that PPU promised – in the official materials promulgated in electronic and print form during the students' enrollment - a particular method of instruction for which students paid a premium in tuition and fees, but delivered a lower-cost [on-line] option which the students had previously declined. . . . Thus, Plaintiffs are 'entitled to investigate through discovery whether Defendant's retaining all monies despite providing a profoundly altered product breached a contractual promise.'

*Id.* (citations omitted).

[7] ECF No. 36 at 6 & n.8 (citing ECF No. 27 at 1).

and their Pennsylvania educational institutions[8] - neither determination would terminate or materially advance the resolution of this case (*i.e.*, the challenged holding meets neither the first nor third criteria of §1292(b)).

To the contrary, on remand, this Court would be required fully to consider the effectiveness and enforceability of Defendant's FRTC as a contract reflecting the parties' meeting of the minds on the essential terms of the student-university relationship. *Cf.* ECF No. 36 at 3-4; 14. Should the Court conclude that the FRTC is an inadequate instrument for that purpose, the Court anticipates that Plaintiffs' breach of contract claim would be dismissed and the case would proceed on the claim of unjust enrichment/*quantum meruit* for the reasons given in the August 11, 2021 Memorandum Opinion. *Id.* at 20-22. The discovery then undertaken would not be materially affected by the legal theory of liability. *Cf.* ECF No. 46 at 3-4.

Finally, Defendant also asserts entitlement to certification under the second criterion of §1292(b). A Court's assessment of whether there are "substantial grounds for difference of opinion" sufficient to its exercise of discretionary certification is not governed by whether another Court has reached a different conclusion as to the law. Moreover, a consideration of evidence of "difference of opinion" on a "threshold legal issue" (such as applicability of the doctrine of implied contract) is not informed by another Court's differing case-specific application, or seemingly internally-divergent articulation, of the same legal conclusion. Three other Pennsylvania District Courts have recently considered student actions against their post-secondary educational institutions for restitution for the alleged difference in value between a traditional on-campus and a pandemic-necessitated on-line education. They are:

---

[8] As reflected in the Superior Court cases discussed in ECF No. 36, the Supreme Court of Pennsylvania has unambiguously adopted a doctrine of implied contract and has never recognized an exception of that doctrine for student-university contracts.

1. *Hickey v. Univ. of Pittsburgh*, Case No. 2:20-cv-00690-WSS, 2021 WL 1630579, *2 (W.D. Pa. Apr. 27, 2021), which Defendant cites as "rejecting implied in fact contract theory based on the university's website, promotional materials and other publications." ECF No. 41 at 8. Although the *Hickey* Court dismissed the case on its facts, it expressly concluded that "Pennsylvania law recognizes the existence of an implied contract between universities and their students." *Id.* at *7. *See also id.* at *4 (noting that the implied contractual relationship between student-university recognized under Pennsylvania law is "not governed by a single document" such as the Financial Responsibility Agreement, but is comprised of/arises from the materials identified by the Pennsylvania Superior Court in *Swartley*); *id.* (looking to specific language from "websites, promotional materials, circulars, admission papers, and publications" in assessing plaintiffs' claim of implied contract). *See also* ECF No. 46 at 6 ("Judge Stickman's conclusion in dismissing plaintiffs' claim was a result of different allegations in that complaint—a factual difference, not a legal one.").[9]

2. *Smith v. Univ. of Penn.*, Case No. 2:20-cv-02086-TJS, 2021 WL 1539493, *6 (E.D. Pa. Apr. 20, 2021), which, as Defendant observes, states that "a cause of action for breach of an implied promise is not cognizable under Pennsylvania law in the higher education context." The *Smith* Court also stated, however, that "the contract [between students and university] is comprised of more than the Financial Responsibility Statement and related financial policies . . .

---

[9] Considerations and conclusions in *Hickey* included: (1) The University's Financial Responsibility Agreement was a valid written agreement that controlled the breach of contract claim because the student agrees to payment terms and the University agrees to present fees to them for payment; (2) the students' contract claim failed for want of a breach of a specific promise in the Agreement; (3) in the alternative, the University's promulgated materials were insufficient to an implied contract claim because they only offered a subjective view of opportunities available "in ordinary times" and did not exclusively promise in-person education; (4) the unjust enrichment claim was foreclosed by the governing contract; (4) alternatively, there was no unjust enrichment as the University continued to provide instruction and the opportunity to earn academic credits, which was "what [the students] paid for"; and (5) the University was forced to its actions by the pandemic, was required to comply with State mandates and its "hands were tied".  While these considerations and conclusions suggest differences of opinion between the Courts, they do not present a disagreement on a controlling question of law.

." *Id.* at *5 citing *Swartley*). Moreover, it went on to conclude - in declining to dismiss the breach of contract claim as to fees as well as tuition - that the university's *website descriptions* of fees as supporting a wide range of services/activities/facilities which were only available/accessible on campus "*amount[ed] to* a specific promise to provide [those] services, resources and facilities to students." *Id.* at *8 (emphasis added). C*f. id.* at 6 ("[I]nformational materials, such as a university's website and brochures distributed to prospective applicants, are not part of a student's contract'").[10]

3. *Ryan v. Temple Univ.*, Case No. 5:20-cv-02164-JMG, 2021 WL 1581563, *7 (E.D. Pa. Apr. 22, 2021), which Defendant cites as "finding that plaintiffs' implied contract theory is precluded by the existence of an express contract concerning the same subject matter as the alleged implied contract, and rejecting arguments based on school publications and the parties' course of conduct." ECF No. 41 at 8. As Plaintiffs duly note, the *Ryan* Court dismissed the plaintiffs' breach of implied contract claim as precluded by the express contract of record in that case; it did not hold that implied contracts cannot exist between Pennsylvania universities and

---

[10] The *Smith* Court also cites *Gati* for the proposition that "[t]he only implied contract Pennsylvania recognizes in the educational context is a private educational institution's obligation to confer a degree upon a student's successful completion of the degree requirements." *Id.* at *4 (citing *Gati*, 91 A.3d at 731). As discussed in this Court's August 21, 2021 Memorandum Opinion, in *Gati* the Pennsylvania Superior Court held that the "essence of the bargain between student and university" is the student's "reasonable expectation based on statements of policy by [the university] and the experience of former students . . . ." 91 A.3d at 731. "That the *Gati* Court identified and considered [particular] aspects of former students' experience relevant to [their] dispute (*e.g.*, issuance of a degree) did not, of course, limit its general statements of law regarding the [more general] relevance of reasonable expectations and course of conduct to student-university contracts." ECF No. 36 at 12, n. 17.

To put this another way, the *Gati* Court's application of Pennsylvania's implied contract doctrine to the particular circumstances of a particular student-university contract action, in no way effects an excision of that otherwise-applicable Pennsylvania general contract law from all other circumstances of student-university contract actions. This is particularly true in the context of the consistent and unambiguous Superior Court case law and absence of any language whatsoever in *Gati* itself suggesting enactment of an otherwise broad exclusion of student-university contracts from Pennsylvania's implied contract doctrine. *Compare Reardon v. Allegheny Coll.*, 926 A.2d 477, 480–81 (Pa. Super. Ct. 2007) ("[B]reach of contract actions brought by a party against a private college or learning institution [are] treated as any other contract.") (reaffirming this "central premise") (citing *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 428 (2001)). *See* ECF No. 46 at 3 (citing *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009) (contracts in Pennsylvania may be "implied in fact").

their students. To the contrary, it observed – in analyzing the students' implied contract claim - that "Courts may infer an implied contract where the parties manifest an agreement upon mutual obligations by virtue of their actions." ECF No. 46 at 6, n. 2 (quoting *Ryan* at *16); *id.* (citing *Ryan*'s further identification of the precepts of Pennsylvania's implied contract doctrine).[11]

In short, the Court is unpersuaded that these cases represent a clear or substantial difference of opinion as to the challenged question of law.[12]

## IV. CONCLUSION

The Court concludes that it would be an inappropriate exercise of its discretion to certify its August 11, 2021 Order for interlocutory appeal under 28 U.S.C. § 1292(B). Defendant's Motion at ECF No. 40 will be therefore be denied. A separate Order will be entered.

Dated: October 26, 2021            BY THE COURT:

                                          LISA PUPO LENIHAN
                                          United States Magistrate Judge

---

[11] The *Ryan* Court concluded the students' implied contract claim was precluded by the Court's recognition of the Student Financial Responsibility Agreement as governing or, in the alternative, could not be maintained on insufficiently clear duties alleged from disfavored sources like catalogues, handbooks and other "school publications". It also noted that it was "unpersuaded that the holding in *Gati* is instructive as to whether the [p]arties' course of dealing in this case created an implied contract." *Id.* at *18, n. 11 (emphasis added).

[12] The Court further observes that Defendant identifies no "conflicting precedent" within Pennsylvania law. Cf. ECF No. 41 at 7 (citing *Bush v. Adams*, 629 F. Supp. 2d 468, 475 (E.D. Pa. 2009) ("Substantial grounds for difference of opinion exist when there is genuine doubt or conflicting precedent as to the correct legal standard applied in the orders at issue.")).